## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

REBECCA ADAMS and
JAMES J. MCFARLAND,

|  |  |
|---|---|
| Plaintiffs, | CIVIL ACTION NO. 3:13-CV-01102 |
| v. | (MEHALCHICK, M.J.) |
| LUZERNE COUNTY, et al., |  |
| Defendants |  |

### MEMORANDUM

Plaintiffs Rebecca Adams and James J. McFarland filed this action pursuant to Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, *et seq*. They name as defendants the County of Luzerne, Luzerne County 911 Emergency Services, aka Luzerne County Department of Public Safety, and Luzerne County Commissioners Stephen A. Urban, Thomas Conney, and Maryanne C. Petrilla. Pending before the Court is Defendants' motion to dismiss. (Doc. 11).

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Rebecca Adams was employed by the Luzerne County 911 Call Center for approximately five years as a dispatcher and dispatch shift supervisor prior to her resignation on October 20, 2010. (Doc. 1, ¶¶ 11, 79). Plaintiff McFarland was the Executive Director of Luzerne County 911 Call Center for seven months prior to his termination on November 18, 2010. (Doc. 1, ¶¶ 83, 103-105).

In the spring of 2010, Edward Casaldi was appointed as Acting Executive Director of the Luzerne County 911 Call Center by the Luzerne County Commissioners. (Doc. 1, ¶ 14). In May 2010, a petition was circulated among the staff at the 911 Call Center to keep Casaldi as the Executive Director permanently. (Doc. 1, ¶ 15). Adams and her colleague, Thomas Farrell, both dispatch supervisors, chose not to sign the petition. (Doc. 1, ¶ 16). Adams alleges that because of her refusal to sign the petition, phone calls between Farrell and her were recorded without permission at the direction of Casaldi. (Doc. 1, ¶¶ 17-19). Adams alleges that a recording of several phone conversations were spliced together to appear as though Adams and Farrell had engaged in a two-hour personal phone conversation on the County Supervisor Line. (Doc. 1, ¶¶ 20-22). Adams avers that this recording was made because neither Adams nor Farrell signed the petition to retain Casaldi as the Executive Director. (Doc. 1, ¶ 34). Adams further alleges that the treatment of her was "harsher and more direct, as she was a female," than the treatment of Farrell. (Doc. 1, ¶¶ 38, 47, 50).

McFarland was directly responsible for the shift supervisors, including Adams and Farrell. (Doc. 1, ¶ 39). McFarland alleges that he refused to "write up" Adams for insubordination. (Doc. 1, ¶¶ 40-42). Plaintiffs allege that part of McFarland's termination was based on the fact that McFarland had "resisted the targeted discrimination of Adams and Farrell and the implementation of constant reprimands." (Doc. 1, ¶ 99).

On April 25, 2013, Plaintiffs filed the instant complaint. In the complaint, Adams alleges a First Amendment retaliation claim; a Fourteenth Amendment equal protection claim; violations of the Pennsylvania Human Relations Act; violations of the Pennsylvania Wiretap Act; violations of the Federal Wiretap Act; and a defamation claim. (Doc. 1). McFarland alleges a First Amendment retaliation claim, a Fourteenth Amendment equal protection claim;

a violation of the Pennsylvania Human Relations Act; and a defamation claim. (Doc. 1). On October 25, 2013, Defendants filed a motion to dismiss for failure to state a claim on the following claims: Adams' First Amendment retaliation claim; McFarland's First Amendment retaliation claim; McFarland's Equal Protection claim; McFarland's PHRA claim; Adams' Pennsylvania and Federal wiretap claims; Adams' defamation claim; and McFarland's defamation claim. (Doc. 11). On November 8, 2013, Defendants filed a brief in support. (Doc. 14). On December 27, 2013, Plaintiffs filed a brief in opposition (Doc. 28), and on January 13, 2014, Defendants filed a reply brief. (Doc. 29). The parties have consented to proceed before a United States magistrate judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 17; Doc. 18). This matter is ripe for disposition.

II.   **DISCUSSION**

   A. LEGAL STANDARD

   Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

   In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable

3

inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A. LUZERNE COUNTY 911 EMERGENCY SERVICES

Plaintiffs withdraw their claims against Luzerne County 911 Emergency Services, on the stipulation that in the event that during the course of litigation it is discovered that Luzerne County 911 Emergency Services is a separate entity or agency, Defendant Luzerne County will assume full and complete liability for Luzerne County 911 Emergency Services. (Doc. 28, p. 18). As such, Luzerne County 911 Emergency Services is **DISMISSED** from this action without prejudice.

4

B.  ADAMS AND MCFARLAND'S FIRST AMENDMENT CLAIMS

To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action. *Campbell v. W. Pittston Borough*, 498 Fed. Appx. 186, 189 (3d Cir. 2012) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). The first factor is a question of law; the latter factor is a question of fact. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). A public employee's statement is protected activity only where (1) the employee spoke as a citizen, (2) about a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made. *Hill*, 455 F.3d at 241–42 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court held that speech by a public employee made within the scope of employment was not protected by the First Amendment. In *Garcetti*, the Court held "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. In reaching this conclusion, the Court reiterated that "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti*, 547 U.S. at 417 (citing, *inter alia*, *Pickering v. Board of Education of Township High School Dist. 205, Will County*, 391 U.S. 563, 568 (1968), *Connick v. Myers*, 461 U.S. 138 (1983), *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)).

5

An employee's speech addresses a matter of public concern when it can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993); *Connick v. Myers*, 461 U.S. 138, 146 (1983); *Johnson v. Lincoln Univ. of Com.*, 776 F.2d 443, 451 (3d Cir. 1985). Whether the speech can be fairly characterized as relating to any political, social or other concern of the community is determined by its "content, form, and context." *Connick*, 461 U.S. at 147–48. The content of the speech may help to characterize it as relating to a matter of social or political concern of the community if, for example, the speaker seeks to "bring to light actual or potential wrongdoing or breach of public trust" on the part of government officials. *Connick*, 461 U.S. at 148. The form and context of the speech may help to characterize it as relating to a matter of social or political concern to the community if, for example, the forum where the speech activity takes place is not confined merely to the public office where the speaker is employed. *Connick*, 461 U.S. at 148–49.

The Third Circuit has emphasized that perceived wrongdoing on the part of a public official is often a matter of public concern. *See Azzaro v. County of Allegheny*, 110 F.3d 968 (3d Cir. 1997); *see also O'Donnell v. Yanchulis*, 875 F.2d 1059 (3d Cir. 1989) ("allegations of corrupt practices by government officials are of the utmost public concern"); see *also Byars v. School District of Philadelphia*, 2013 WL 1827373 (E.D. Pa. 2013) (misuse of government funds is a matter of public concern).

### 1.  Adams' First Amendment Retaliation Claim

In this case, Adams alleges that she was retaliated against for her refusal to sign the petition to keep Casaldi as Executive Director. (Doc. 1, ¶ 111). Adams states that as a result she was targeted with unwarranted disciplinary action, illegal tape recordings of her conversations

without her consent, and dissemination of these particular recorded conversations. (Doc. 1, ¶ 111). Defendants move to dismiss Adams' claim on the basis that the activity in question is not protected by the First Amendment. (Doc. 14, p. 6). The parties agree that Adams was a public employee. (Doc. 14, pp. 5-6; Doc. 28, p. 7). With respect to the first prong, Adams states that her refusal to sign the petition was as a citizen, and not pursuant to her official duties. Defendants assert that Adams' decision not to support Casaldi was within the scope of her official duties because Adams' decision not to support Casaldi "could only have been derived from her observations and opinions gained in working with him." (Doc. 29, p. 3). Thus, Defendants conclude, that this information was the result of special knowledge or expertise on the job. *See Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Foraker*, 501 F.3d at 239 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). When Adams refused to sign the petition, it is presumed, although not explicitly stated, that she was at work during work hours. (Doc. 1, ¶ 15) ("a Petition was circulated among those that worked at the 911 Call Center to keep Casaldi as the Executive Director"). Some courts have found this sufficient to show that speech was made in the course of a public employee's official duties. *Mills v. City of Evansville, Ind.*, 452 F.3d 646, 648 (7th Cir. 2006). However, in *Foraker*, the Court of Appeals for the Third Circuit, while citing *Mills v. City of Evansville*, did not adopt this reasoning and focused on the practical question of whether the speech was "made pursuant to employment duties" and was "among the tasks [the plaintiff was] paid to perform." *Foraker*, 501 F.3d at 241.

At this juncture in the case, at the motion to dismiss stage, there is no evidence that making a statement, either for or against a potential Executive Direction, was within Adams' duties. *See Moore v. Darlington Twp.*, 690 F. Supp. 2d 378, 391 (W.D. Pa. 2010). Furthermore, "the 'right to vote is personal,' and signing or refusing to sign a candidate's petition is clearly related to the exercise of that right, which a citizen undertakes in his personal capacity." *Moore,* 690 F. Supp. 2d at 391 (citing *United States v. Bathgate*, 246 U.S. 220, 227 (1918)). Therefore, the Court finds that Adams has alleged facts sufficient to show that her refusal to sign the petition was not made pursuant to her employment duties. Thus, Adams has adequately alleged that she was speaking as a citizen, and the first prong (of whether the activity in question was protected activity) is satisfied.

With regard to the second prong, Defendants state that the matter is not of public concern, but rather it relates to private grievances and activities not of interest to the public at large. *See Bradshaw v. Township of Middleton*, 296 F. Supp. 2d 526, 538. Adams alleges that this was a matter of public concern because it involved a public position, namely, the Luzerne County 911 Executive Director position. (Doc. 28, p. 7). In the complaint, Adams alleges that she did not sign the petition based upon "personal factors." (Doc. 1, ¶ 16).

The Third Circuit has held that perceived wrongdoing on the part of a public official is often a matter of public concern. *Azzaro,* 110 F.3d 968. Moreover, a plaintiff's refusal to sign a petition is protected by the First Amendment as a form of political affiliation. *Moore, 690 F. Supp. 2d at 391*. The factual circumstances surrounding Adams' refusal to sign the petition are not entirely clear; regardless, the signing or not signing of a petition is an act of affiliating oneself with, or refusing to affiliate oneself with, a political candidate, which is an act protected by the First Amendment. Further, the circumstances surrounding Casaldi's candidacy are not

8

entirely developed, and wrongdoing surrounding the appointment of a public official could be a public concern. At this stage in the proceedings, the Court finds that Adams has alleged facts sufficient to survive a motion to dismiss. As such, Defendants' motion to dismiss Adams' First Amendment retaliation claim is **DENIED**.

### 2. McFarland's First Amendment Retaliation Claim

McFarland's First Amendment retaliation claim is based on his "refusal to discipline Adams and Farrell for alleged violations and for questioning the illegal recordings." (Doc. 1, ¶ 126). McFarland refused to discipline Adams for her alleged improper actions relating to the recorded calls. Because of this refusal, McFarland alleges that Defendants terminated his employment. (Doc. 28, p. 10).

Defendants move to dismiss this claim on the basis that McFarland was acting within his official duties, and the speech at issue is a private grievance and the activities are not of interest to the public at large. (Doc. 14, ¶ 6; Doc. 29, pp. 5-6). McFarland alleges that his actions were in the public interest. (Doc. 28, p. 10). The Court agrees with Defendants that McFarland was acting within his official duties when he refused to discipline Adams and Farrell for alleged violations. McFarland refused to discipline Adams and Farrell as part of his duties as supervisor. *See Hill*, 455 F.3d at 242 (Borough Manager reported mayor's conduct and harassing actions to the Borough Council pursuant to his official duties). Under *Garcetti*, McFarland was not speaking "as a citizen" when he made decisions regarding disciplining employees whom he supervised, and when he questioned the actions of other employees. Thus, as a matter of law, McFarland's actions relating to internal disputes and disciplining Adams and Farrell are not protected speech. As such, Defendants' motion to dismiss McFarland's First Amendment retaliation claim is **GRANTED**.

C.  M<small>C</small>F<small>ARLAND'S</small> E<small>QUAL</small> P<small>ROTECTION</small> C<small>LAIM</small>

The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Supreme Court outlined the "class-of-one" theory of equal protection. Under a "class-of-one" claim, a plaintiff asserts that he "has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Olech*, 528 at 564. According to the Third Circuit, to prove a "class-of-one" claim, a plaintiff must establish that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill*, 455 F.3d at 239.

In the current case, Defendants move to dismiss McFarland's equal protection claim on the basis that a class of one action cannot be brought in a public employment context. (Doc. 14, p. 8). Defendants rely on *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 605 (2008). McFarland argues that he was treated dissimilarly because he was terminated based on the illegal recording of Adams, yet no one else, "including those parties who were behind the illegal recording of Ms. Adams" were terminated, disciplined, or reprimanded. (Doc. 28, p. 11). McFarland further argues that no investigation was taken against Casaldi. (Doc. 28, p. 11). McFarland points to Casaldi as a similarly situated individual who was allowed to maintain his employment, despite his involvement in the alleged illegal recording. (Doc. 28, p. 12).

A class of one equal protection claim is not cognizable in the public employment context. *Skrutski v. Marut*, 288 Fed. Appx, 803, 809 (3d Cir. 2008) (citing *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591 (2008)). In *Enguist*, the Supreme Court stated:

> [T]he class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.

*Engquist*, 553 U.S. at 605.

Here, McFarland is alleging an Equal Protection claim based on a class of one theory in the public employment context. As such, McFarland cannot establish an Equal Protection claim based on the facts presented in the complaint and Defendants' motion to dismiss McFarland's Equal Protection claim is **GRANTED** with prejudice.

## D. McFarland's Pennsylvania Human Relations Act Claim

Defendants move to dismiss McFarland's Pennsylvania Human Relations Act (PHRA) claim, arguing that McFarland does not allege that he is a member of a protected class, or that a person outside of the protected class received more favorable treatment. (Doc. 14, p. 9; Doc. 29, pp. 6-7). In his brief in opposition, McFarland clarifies that he is asserting a claim under the anti-retaliation provision of the PHRA, 43 P.S. § 955(d), based on his opposition to the discriminatory conduct imposed on Adams, and his subsequent termination for failing to unfairly discipline Adams. McFarland claims that discriminatory and retaliatory action was taken against him "after he refused to participate in the discriminatory action against Adams by not taking disciplinary action against her for unfounded violations of workplace procedure." (Doc. 28, 15).

11

The PHRA's anti-retaliation provision states:

It shall be an unlawful discriminatory practice . . . [for any employer] to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

43 P.S. § 955(d).

The Third Circuit has held that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently. *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (citing *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996)).

Under the anti-retaliation provision of the PHRA, a plaintiff must come forward with some evidence establishing that a *prima facie* case of retaliation exists. *Rife v. Borough of Dauphin*, 647 F. Supp. 2d 431, 443 (M.D. Pa. 2009). In order to establish a *prima facie* case of illegal retaliation under the anti-discrimination statutes, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Fogleman*, 283 F.3d at 567-68. In order to satisfy the PHRA's protected activity requirement, a plaintiff must demonstrate that Defendants discriminated against him either "because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 P.S. § 955(d). The first clause is known as the opposition clause, and the second is known as the participation clause. *Rife*, 647 F. Supp. 2d at 443.

In his brief in opposition, McFarland alleges that his retaliation claim is based on the opposition clause because he opposed Defendants unfair treatment of Adams based on her status as a female employee. McFarland alleges that the "protected activity" that he engaged in was his opposition to Defendants unwarranted discipline of Adams. The record reflects that this opposition was connected to the unequal treatment of a female employee. Thus, on the face of the complaint, McFarland has alleged facts that he engaged in protected activity based on this opposition, and the first prong is satisfied.

With respect to the second and third prongs, McFarland alleges that he was terminated from his employment in retaliation for not participating in discriminatory action against Adams. (Doc. 28, p. 15). McFarland alleges that Adams was subjected to discriminatory conduct and discipline, he refused to participate in this conduct, and as a result he was terminated from his employment. As such, McFarland has alleged facts that he was subject to adverse action, namely he was terminated, because he engaged in the protected activity. The Court finds that McFarland has alleged facts to establish a *prima facie* claim under the anti-retaliation opposition clause of the PHRA, and Defendants' motion to dismiss McFarland's PHRA claim is **DENIED**.

### E. Adams' Pennsylvania and Federal Wiretap Claims

Plaintiff Adams brings claims under both the Pennsylvania Wiretap Act, codified at 18 Pa.C.S. § 5701, *et seq*., and the Federal Wiretap Act ("FWA"), codified at 18 U.S.C. § 2510, *et seq*. Defendants move to dismiss these claims on the basis that Luzerne County does not fit within the definition of a "person" under the wiretap statutes. Further, with respect to the County Commissioners, Defendants argue that there are no allegations in the complaint that

13

the recordings were made by the individual Commissioners named in the complaint. (Doc. 14, p. 10).

### 1.  Adams' Federal Wiretap Act Claim

The Federal Wiretap Act provides that "any person who—(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" shall be found in violation of the statute. 18 U.S.C. § 2511(1)(a). "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6). "As written, the statute does not include a municipality within its definition of 'person.'" *Abbott v. Village of Winthrop Harbor*, 205 F.3d 976, 980 (7th Cir. 2000).

The Courts of Appeals for the Sixth and Seventh Circuits have addressed the issue of whether municipalities are subject to liability for violations of the Federal Wiretap Act. As enacted in 1968, the Act authorized recovery of civil damages only against a "person" and made no mention of an "entity." In 1986, however, Congress extended the cause of action from against any "person" to against any "person or entity" who committed the violation. *See Abbott*, 205 F.3d at 980; 18 U.S.C. § 2520. Section 2520, "Recovery of civil damages authorized" states:

> [A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

> 18 U.S.C. § 2520(a).

14

The Sixth Circuit reasoned that the inclusion of the word "entity" in the 1986 amendments brought municipalities within the scope of § 2520. *Adams v. City of Battle Creek*, 250 F.3d 980, 985 (6th Cir. 2001) ("The addition of the words 'entity' can only mean a governmental entity because prior to the 1986 amendments, the definition of 'person' already included business entities. In order for the term not to be superfluous, the term 'entity' necessarily means governmental entities."). In support of its decision, the Sixth Circuit reasoned that the 1986 amendment "added the same language to the civil liability provision for interception of stored wire and electronic communications under 18 U.S.C. § 2707(a)." The *Adams* court analyzed the Senate Committee Report of 18 U.S.C. § 2707, the Stored Communications Act ("SCA"), finding that it paralleled the section for liability under the Federal Wiretap Act, and noted that it "specifically states that the word 'entity' includes governmental entities." *Adams*, 250 F.3d at 985. Based on this cursory analysis, the Sixth Circuit held that governmental entities may be liable under 18 U.S.C. § 2520. *Adams*, 250 F.3d at 985.[1] Several district courts have followed this line of reasoning: *Garza v. Bexar Metro. Water Dist.*, 639 F. Supp. 2d 770, 774 (W.D. Tex. 2009) ("There would have been no reason for Congress to carve out an exception for the United States if governmental entities could not be sued under the statute."); *Williams v. City of Tulsa*, 393 F. Supp. 2d 1124, 1132-33 (N.D. Okla.

---

[1] *Adams* also relied on the reasoning of a Second Circuit case, which held that a governmental entity can be held civilly liable **under § 2707(a).** *Organizacion JD Ltda. v. U.S. Dept. of Justice*, 18 F.3d 91, 94-95 (2d Cir. 1994)(emphasis added); *relying on PBA Local No. 38 v. Woodbridge Police Dept.,* 832 F. Supp. 808, 823 (D.N. J. 1993); *Bodunde v. Parizek,* 1993 WL 189941 (N.D. Ill. May 27, 1993) (concluding that "entity" must be taken to mean governmental entity based on the legislative history that specifically references "governmental entities" as potentially liable under § 2707(a)).

2005) ("Congress' subsequent amendment in 2001 to exclude the United States from entities that could be liable evidences a Congressional understanding that the 1986 amendment created governmental liability."); *Conner v. Tate*, 130 F. Supp. 2d 1370, 1374-75 (N.D. Ga. 2001); *Dorris v. Absher*, 959 F. Supp. 813, 820 (M.D. Tenn. 1997), *rev'd in part on other grounds*, 179 F.3d 420 (6th Cir. 1999); *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F. Supp. 808, 823 (D.N.J. 1993).[2]

However, the Seventh Circuit noted, and this Court agrees, that the Sixth Circuit failed to consider that 18 U.S.C. § 2520 creates no substantive rights, and *Adams* did not consider whether other parts of the Federal Wiretap Act created substantive rights enforceable against an entity. *Seitz v. City of Elgin*, 719 F.3d 654, 659 (7th Cir. 2013) *cert. denied*, 134 S. Ct. 692 (2013). "Those cases simply ended the inquiry with the conclusion that governmental units are 'entities' under § 2520 and therefore were amenable to suit for all violations of the FWA." *Seitz*, 719 F.3d at 659. The Seventh Circuit further explained that the *Adams* court's reliance and comparison of the Stored Communications Act, 18 U.S.C. § 2707, was misplaced. While it is true that § 2707 and § 2520 use similar language to create a private cause of action for violations of the Stored Communications Act and the Federal Wiretap Act, in the Federal Wiretap Act, § 2511(1)

---

[2] The Court of Appeals for the Third Circuit has not addressed this issue, nor has this Court. Within the Third Circuit, *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F. Supp. 808, 823 (D.N.J. 1993), found that municipalities can be liable for violations of 18 U.S.C. § 2511(1). In *PBA Local No. 38*, the district court was persuaded by the addition of the "or entity" language in § 2520(a). *PBA* relied on *Bodunde v. Parizek*, 1993 WL 189941 (N.D. Ill. May 28, 1993), which extended liability under § 2511(1) to governmental entities. The *Bodunde* court, like *Adams*, 250 F.3d 980, relied on the legislative history of 18 U.S.C. § 2707 in finding that governmental entities could be subject to liability under § 2520.

creates a substantive right against a "person" only, whereas under the Stored Communications Act, the relevant provision speaks in much broader terms. *Seitz*, 719 F.3d at 659; 18 U.S.C. § 2701(a) ("***whoever*** (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished") (emphasis added). Thus, the Seventh Circuit concluded that "*Adams* inappropriately consulted the legislative history of a statute that does not truly parallel the FWA." *Seitz*, 719 F.3d at 659-60. This Court agrees with the Seventh Circuit that § 2707 and its legislative history "offer little help in determining the scope and breadth of the substantive right created by § 2511(1)." *Seitz*, 719 F.3d 660.

In the instant case, as in *Seitz*, the plaintiff accuses the municipality of violating § 2511(1). Thus, the question before this Court is whether the definition of "person" under § 2511(1) extends to government entities. Again, this Court finds the reasoning of the Seventh Circuit persuasive in deciding this issue. The Seventh Circuit held that "[t]he plain text of that definition—which has remained unchanged since passage of the original act in 1968—does not extend to government units. Instead, it reaches only employees or agents of a government." *Seitz*, 719 F.3d at 656; *Abbott*, 205 F.3d at 980 ("Absent a clearly expressed legislative intent to the contrary, the statutory language must be regarded as conclusive."). As already explained, § 2520 creates no substantive rights. *Seitz*, 719 F.3d at 657. "Rather, it simply provides a cause of action to vindicate rights identified in other portions of the FWA . . . we must look to the scope and nature of the specific substantive right plaintiffs accuse defendants of violating to determine whether plaintiffs may assert that right against a municipality." *Seitz*, 719 F.3d at 657-58. Thus,

17

this Court finds that, even though "entity" includes government units, § 2520 provides no cause of action against a municipality for violations of § 2511(1) because nothing in the 1986 amendments altered the scope of the substantive violation by expanding it beyond "persons" as defined in the Federal Wiretap Act. *See* 18 U.S.C. § 2510(6); *see also Seitz*, 719 F.3d at 658. As such, § 2511(1) protects only against actions taken by a "person" as defined in the statute, which does not include municipalities. *Abbott*, 205 F.3d at 980.

Furthermore, and equally persuasive to this Court, is that § 2511(3)(a), added by the same 1986 law that inserted "or entity" into § 2520, prohibits "a person or ***entity*** providing an electronic communication service to the public [from] intentionally divulg[ing] the contents of any communication . . . while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication." *See* § 2511(3)(a) (emphasis added). Thus, as the Seventh Circuit noted, § 2511(3)(a) creates a substantive right enforceable against an entity. "Because the 1986 amendments added § 2511(3), they also had to alter § 2520 to match the 'person or entity' language used in § 2511(3) [. . .] Without that change, parties could sue a 'person' who violated § 2511(3)(a) but not an entity even though § 2511(3) explicitly referenced both. Thus, excluding governmental units from liability for violations of § 2511(1) does not . . . read 'entity' out of the statute." *Seitz*, 719 F.3d at 658-59.

In analyzing the reasoning of the Sixth and Seventh Circuits, this Court finds the reasoning of the Seventh Circuit most persuasive and agrees with the Seventh Circuit that § 2511(1) creates a substantive right only against a "person," which, by its definition, does not include a municipality. Although the 1986 amendment added the word "entity" to the statutory text, thus permitting suit against governmental units, the 1986 amendment only extends so far as a substantive provision identifies an "entity" within that provision. While the Court notes

18

that § 2511(3) does extend liability to both a person and an entity, the Court finds that § 2511(1), the statutory provision at issue in this case, extends liability to a "person" only as defined by 18 U.S.C. § 2510(6). For these reasons, Defendants' motion to dismiss Luzerne County from Adams' Federal Wiretap Act claim is **GRANTED**.

### 2. Adams' Pennsylvania Wiretap Act Claim

Defendants move to dismiss Adams' Pennsylvania wiretap claim against Luzerne County on the basis that Luzerne County is not a "person" as defined in the Pennsylvania statute. The Pennsylvania wiretap statute directly parallels the Federal Wiretap Act. Under 18 Pa.C.S. § 5725, "[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person." 18 Pa.C.S. § 5725(a). The Act defines "person" as "[a]ny employee, or agent of the United States or any state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." 18 Pa.C.S. § 5702. There is no mention of the word "entity" in 18 Pa.C.S. § 5725. Thus, the Court, in adopting the same statutory construction outlined above with respect to the Federal Wiretap Act, interprets "person" as defined in the Pennsylvania statute. As such, the Court finds that Luzerne County is not a person as defined by 18 Pa.C.S. § 5702, and the Court will **GRANT** Defendants' motion to dismiss Luzerne County from Adams' Pennsylvania wiretap claim.

### 3. The County Commissioners

Defendants also move to dismiss the Commissioners from Adams' wiretap claims on the basis that "there is no allegation that the recordings were made by the Commissioners." (Doc.

14, p. 10). In the complaint, Adams alleges that the Commissioners were aware of the recording, and it was played for Commissioner Petrilla. (Doc. 1, ¶¶ 27, 35). Adams further states that the actions of Casaldi to record Adams' conversations were taken "on behalf and with the knowledge and approval of . . . the Luzerne County Commissioners in directing the recording of conversations between Adams and Farrell for several periods of time." (Doc. 1, ¶ 141). Moreover, in Adams' brief in opposition, she states that the Commissioners "may have very well instructed and or permitted the recordings to take place." (Doc. 28, p. 16). Defendants do not address this in their reply brief. (*See* Doc. 29). The Court finds that there are, in fact, allegations in the complaint that the recordings could have been made at the direction of the Luzerne County Commissioners and Adams has alleged personal involvement on the part of the Commissioners. Defendants do not move to dismiss the Luzerne County Commissioners on any other basis, and as such, the Court will **DENY** Defendants' motion to dismiss the Luzerne County Commissioners.

F.  ADAMS AND MCFARLAND'S DEFAMATION CLAIMS

Adams and McFarland argue that they have been forced to defame themselves by having to explain to third parties the facts relative to their resignation and termination, respectively. (Doc. 1, ¶ 161). Additionally, McFarland was subjected to unnecessary newspaper and media scrutiny (Doc. 1, ¶ 162), and Adams has been forced to explain the circumstances surrounding her constructive discharge. (Doc. 1, ¶ 163). Plaintiffs allege that their reputations have been harmed. (Doc. 1, ¶¶ 162-163). Defendants move to dismiss Adams and McFarland's defamation claims, arguing that the defamation claims are barred by the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 Pa.C.S. § 8541, *et seq*. (Doc. 14, p. 10). Defendants assert that they are entitled to immunity because none of the Plaintiffs' claims fall

20

under any of the eight enumerated exceptions to immunity under 42 Pa.C.S. § 8542. (Doc. 14, p. 10).

Defendants are correct that Plaintiffs' claims do not fall under the enumerated exceptions of 42 Pa.C.S. § 8542. With respect to Plaintiffs' claims against Luzerne County, a city or county is immune from suit under the PPSTCA. The PPSTCA makes local agencies immune from state law tort claims (with a few exceptions not applicable here).[3] 42 Pa.C.S. §§ 8541–42. Luzerne County qualifies as a local agency under the PPSTCA. 42 Pa.C.S. § 8501; *Rittenhouse Entertainment, Inc. v. City of Wilkes-Barre*, 861 F. Supp. 2d 470, 489 (M.D. Pa. 2012). As such, Luzerne County has immunity under the statute and Defendants' motion to dismiss Plaintiffs' defamation claims against Luzerne County is **GRANTED** with prejudice.

The individual county employees, however, are not protected by immunity. The PPSTCA grants municipal employees the same immunity as agencies, *see* § 8545, except that employees may be liable for their conduct if it amounted to "actual malice" or "willful misconduct." *See Rittenhouse Entertainment*, 861 F. Supp. 2d at 489; 42 Pa.C.S. § 8550 (employees are immune from state tort liability for acts within the scope of the employment except when the alleged conduct involves "a crime, actual fraud, actual malice or willful misconduct"); *see also Brummell v. City of Harrisburg*, No. 09-1816, 2010 WL 3896382, at *3

---

[3] The PPSTCA's exceptions allow liability against agencies for: (1) the operation of a motor vehicle in the possession or control of a local agency; (2) the care, custody or control of personal property in the possession or control of a local agency; (3) the care, custody or control of real property; (4) a dangerous condition created by trees, traffic controls, or street lights; (5) a dangerous condition of utility service facilities; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; (8) the care, custody or control of animals in possession or control of a local agency. 42 Pa.C.S. § 8542.

(M.D. Pa. Sept. 30, 2010). Willful misconduct has been defined as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow." *Horton v. City of Harrisburg*, No. 06-2338, 2009 WL 2225386, at *6 (M.D. Pa. July 23, 2009) (quoting *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (Pa. 1994)). The Pennsylvania Supreme Court has held that "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (1994)). With respect to Plaintiffs' claims against the individual Commissioners, Plaintiffs allege intentional torts on the part of these employees, and this constitutes willful misconduct under the PPSTCA. Thus, the Luzerne County Commissioners are not immune from suit.

The Court finds that Plaintiffs have advanced claims of wilful misconduct sufficient to survive a motion to dismiss. (*See* Doc. 1, ¶ 168) ("The actions of the Defendants were egregious, willful and wanton in nature."). Specifically, Plaintiffs allege that the Commissioners were aware of the recording, and "engaged in willful misconduct when not only recording the parties, but in their altering of the recording to distort the true conversations that took place." Plaintiffs further assert the Commissioners used the recordings as a basis to improperly discipline Adams. (Doc. 28, p. 17-19). Thus, to the extent Defendants move to dismiss Plaintiffs' state law claims under the Pennsylvania Political Subdivision Tort Claims Act on the basis that the Luzerne County Commissioners have immunity from these claims, Plaintiffs have sufficiently alleged that the Luzerne County Commissioners engaged in willful misconduct. As such, Defendants' motion to dismiss Plaintiffs' defamation claims against the Luzerne County Commissioners is **DENIED**.

An appropriate Order follows.


Dated: August 6, 2014                          *s/ Karoline Mehalchick*
                                               **KAROLINE MEHALCHICK**
                                               **United States Magistrate Judge**