UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES J. MCFARLAND,<br><br>  Plaintiff,<br><br>v.<br><br>LUZERNE COUNTY, et al.,<br><br>  Defendants. | CIVIL ACTION NO. 3:13-CV-01102<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

This matter is before the Court on the parties' cross-motions for summary judgment on remaining state law claims for defamation and retaliation under the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951, *et. seq*. (Doc. 67; Doc. 68). For the reasons stated herein, the Court will deny Plaintiff's motion for summary judgment, and grant Defendants' motion for summary judgment.

**I. BACKGROUND**

  A. PROCEDURAL BACKGROUND

The Plaintiffs, Rebecca Adams ("Ms. Adams") and James McFarland ("McFarland"), initiated this action on April 25, 2013, against Luzerne County, Luzerne County 911 Emergency Services, and the Luzerne County Commissioners, asserting federal claims under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments of the United States Constitution and the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*, as well as Pennsylvania state law claims for defamation, retaliation under the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951, *et. seq.* ("PHRA"), and for violations of the Pennsylvania

Wire Tapping and Electronic Surveillance Control Act, 18 Pa. Stat. § 5725, *et. seq.*[1] (Doc. 1). On October 25, 2013, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 11). By Memorandum and Order dated August 6, 2014, the Court granted in part and denied in part Defendants' motion to dismiss. (Doc. 35; Doc. 36). Specifically, the Court dismissed Defendant Luzerne County 911 Emergency Services without prejudice, permitted all claims asserted by Ms. Adams to proceed except for her Federal Wiretap Act claim, and dismissed all claims asserted by McFarland, except for his defamation claim and PHRA retaliation claim. (Doc. 36).

On July 31, 2015, Ms. Adams was dismissed from the action pursuant to the terms of a settlement agreement entered into between the parties. (Doc. 66). That same day, both McFarland and Defendants filed opposing motions for summary judgment as to the remaining state law claims for defamation and retaliation under the PHRA. (*See* Doc. 67; Doc. 68).

Defendants filed a brief in support of their motion for summary judgment on August 5, 2015 (Doc. 71), together with a statement of facts (Doc. 70), and corresponding exhibits (Doc. 69). McFarland filed a brief in opposition to Defendants' motion for summary judgment on September 14, 2015 (Doc. 88), along with exhibits to rebut Defendants' statement of facts (Doc. 89). Defendants filed a reply brief on September 28, 2015. (Doc. 90).

McFarland filed a brief in support of his motion for summary judgment, various attached exhibits (Doc. 73), and a statement of facts (Doc. 74), on August 5, 2015.

---

[1] The parties consented to the Court's jurisdiction over this matter on December 6, 2013. (Doc. 19).

Defendants filed their opposition brief on September 14, 2015. (Doc. 85). McFarland did not file a reply brief to Defendants' brief in opposition to his motion for summary judgment. As a reply brief is not mandated by the local rules, this matter is now ripe for disposition on the remaining claims; namely, McFarland's defamation claim and PHRA retaliation claim. *See* L.R. 7.7.

### B. Factual Background[2]

The facts relevant to the instant motion for summary judgment are presented as follows. McFarland was appointed as the Executive Director of Luzerne County 911 on April 15, 2010. (Doc. 69-1, at 9). Prior to his appointment, Edward Casaldi ("Casaldi") was employed as the interim acting director. While working in that interim position, Casaldi applied for the Executive Director position. (Doc. 69-4, at 11). According to McFarland, a petition was circulated during that time within Luzerne County 911 Emergency Services in support of permanently hiring Casaldi as Executive Director. (Doc. 74, at 3). Former Plaintiff Ms. Adams and Thomas Farrell ("Mr. Farrell"), who were then employed as Dispatch Shift Supervisors, refused to sign the petition. McFarland was subsequently

---

[2] McFarland argues that he never received a response to the requests for admissions that were served on Defendants on February 28, 2015. (Doc. 73 at 7). He thus requests that the Court grant his motion for summary judgment on the predicate facts deemed admitted by Defendants' failure to respond to the requests for admission. In response, Defendants argue that they did respond to McFarland's request for admissions, and in support of this representation, they attach a sworn affidavit by Defendants' counsel attesting to the fact that counsel for Plaintiff afforded Defendants an extension of time to respond to the requests and on October 1, 2014, counsel for Defendants hand delivered the responses to counsel for Plaintiff, who then acknowledged receipt of the discovery responses that day on the record at the scheduled deposition. Defendants also attach a copy of the responses to the affidavit. (Doc. 82-12). In light of Defendants' submissions, these requests for admission will not be deemed admitted for purposes of resolving the pending cross-motions for summary judgment.

appointed as Executive Director over Casaldi and Casaldi became Deputy Director. (Doc. 69-7, at 9).

In May of 2010, certain conversations between Ms. Adams and Mr. Farrell conducted on the "supervisor" line, a non-emergency phone line at Luzerne County 911 Emergency Services, were recorded. While the parties dispute whether such recordings were permissible, it is undisputed that Casaldi created a disk of the recorded calls and according to McFarland, delivered the disk to various other supervisors and officials. McFarland alleges that shortly after Casaldi disseminated the recordings, McFarland was asked to meet with various officials, including Commissioner Maryanne Petrilla ("Ms. Petrilla"). At that meeting, McFarland was instructed to suspend Ms. Adams and Mr. Farrell for conducting personal conversations on the supervisor line. (Doc. 69-1, at 18). However, no disciplinary action was taken against them.

McFarland alleges that Ms. Adams was repeatedly subjected to unwarranted disciplinary action by Defendants after she had contested Defendants recording her conversations. For example, on June 28, 2010, Ms. Adams was suspended by Manager John Emmert for sending a Computer Aid Dispatch message to on-duty dispatchers that he perceived to be improper, in that he interpreted the message conveyed by Ms. Adams as condoning dispatchers to sleep during their shifts. (Doc. 69-2, at 25). In July of 2010, Ms. Adams received a written reprimand by McFarland for violating the standard operating guidelines when she posted on her Facebook account, while off-duty, the identity of a young man whom she had learned committed suicide during her shift, prior to the family receiving notification of the young man's death. (Doc. 69-5, at 2; Doc. 82-1, at 55-56).

McFarland was terminated on November 15, 2010. (Doc. 69-5, at 75). He argues that he was discharged primarily for his refusal to discipline both Ms. Adams and Mr. Farrell as a result of what he deemed to be Defendants' "illegal recording" of their conversations, and for opposing Defendants' continual discipline of Ms. Adams for other alleged infractions that he perceived to be unfounded and thus, discriminatory and retaliatory in nature. McFarland also claims that Defendants "publically disseminated his termination on December 1, 2010 in the County Commissioner Meeting Minutes, knowing fully well . . . that the Commissioners and Defendants authorized and engaged in illegal activity by illegally recording Adams and Farrell." Defendants argue, and McFarland concedes in part, that he was terminated due to his lack of management experience and his failure to implement the Triennial Plan, a plan to coordinate the operation of emergency services in Luzerne County. (Doc. 69-1, at 7; Doc. 69-3, at 10).

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). As stated by the Third Circuit Court of Appeals:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.
>
> *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

Thus, "when presented with cross motions for summary judgment, the Court must consider the motions separately, and view the evidence presented for each motion in the light most favorable to the nonmoving party." *Borrell v. Bloomsburg Univ.*, 63 F. Supp. 3d 418, 433 (M.D. Pa. 2014) (citations omitted). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions." *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)).

### III. DISCUSSION

#### A. PHRA CLAIM

McFarland argues that he is entitled to summary judgment because he has established a *prima facie* case of retaliation under the PHRA. Specifically, McFarland relies

on the anti-retaliation provision of the PHRA in arguing that he opposed Defendants' discriminatory treatment of a female supervisor, Ms. Adams. 43 Pa. Stat. § 955(d); (Doc. 73, at 16). Defendants oppose McFarland's motion for summary judgment and further seek summary judgment in their favor on the basis that McFarland has not set forth a *prima facie* case of retaliation under the PHRA in that he has failed to proffer evidence supporting an essential element of a retaliation claim—a causal connection between the employee's protected activity and the employer's adverse action. (Doc, 71, at 5). Defendants alternatively argue that should the Court find that McFarland has demonstrated a *prima facie* case of retaliation under the PHRA, his claim should nevertheless fail because McFarland has failed to present evidence supporting that the legitimate non-discriminatory justification for his termination advanced by Defendants was pretextual. (Doc. 71, at 7). As this is a ruling on cross-motions for summary judgment, the Court considers Defendants' motion for summary judgment first, and in doing so, views the evidence in the light most favorable to McFarland, the party opposing the motion.

In the absence of direct evidence of retaliation, a retaliation claim under the PHRA proceeds under the familiar three-step burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005).[3] First, the plaintiff bears the burden of establishing a *prima facie* case of proscribed

---

[3] "Although the PHRA is a statute of independent force under Pennsylvania law, its proscriptions have generally been construed to be coextensive with their federal counterparts." *Toth v. Cal. Univ. of Pa.*, 844 F. Supp. 2d 611, 626 (W.D. Pa. 2012) (citing *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir. 1996); *see also Fogleman v. Mercy Hosp.,* 283 F.3d 561, 567 (3d Cir. 2002) ("The language of the PHRA is . . . substantially similar to [Title VII and other federal] anti-retaliation provisions, and we have held that the PHRA is
*(footnote continued on next page)*

retaliation under the PHRA. If plaintiff succeeds in establishing a *prima facie* case, the burden of production of evidence then shifts to defendant to "articulate some legitimate, nondiscriminatory reason for the . . . [termination]." *McDonnell Douglas,* 411 U.S. at 802. Upon doing so, the burden shifts back to the plaintiff, who is then afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were merely a pretext for retaliation. *Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir. 2000) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-54 (1981)). "Although the burden of production of evidence shifts back and forth, the plaintiff has the ultimate burden of persuasion at all times." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)).

### 1. Plaintiff has failed to establish a p*rima facie* case of retaliation.

Under the *McDonnell Douglas* framework, the plaintiff must, as a threshold matter, set forth a *prima facie* case of retaliation by presenting evidence: "(1) that s/he engaged in a protected activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action." *Fasold*, 409 F.3d at 188 (citation omitted).

The first and second elements of McFarland's *prima facie* case are wholly undisputed by the parties. Instead, the parties contest whether McFarland has established the third prong—a causal connection between the protected activity and McFarland's termination.

---

to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different . . . .").

However, in reviewing the record and submissions by the parties, it is clear to the Court that further analysis is required as to the first prong of the analysis—McFarland's engagement in a "protected activity." Defendants summarize McFarland's action as one based on "allegations that he was terminated for his refusal to discipline and participate in the discrimination of Ms. Adams." (Doc. 71, at 2; Doc. 85, at 2). Plaintiff concludes that he "was primarily fired because he refused to take action against Adams, . . . which is considered a protected activity under the PHRA." (Doc. 73, at 18). These conclusory statements do not identify for the Court exactly what "protected activity" McFarland engaged in that forms the basis of his retaliation claim, which further confuses the parties' treatment and analysis of the causation element in dispute.

While Defendants' contention with respect to the causation element of McFarland's retaliation claim is well taken, negating the existence of causation is immaterial when no protected activity occurred. Defendants' causation analysis presented in their brief in support of their motion for summary judgment certainly reveals the difficulty Defendants had in deciphering and thus articulating precisely what protected activity Plaintiff was engaged in. (Doc. 71, at 6 (assuming for purposes of the causation analysis that McFarland's objections to his discipline of Ms. Adams constitutes a protected activity under the PHRA but noting that McFarland's argument that he was fired for objecting to his own discipline of Ms. Adams "encapsulates the absurd underpinnings of Plaintiff's retaliation claims")). Thus, the Court will consider the protected activity element within the context of Defendants' causation analysis, given that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of

governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). As such, the Court pauses to consider whether McFarland has, in fact, engaged in a protected activity.

In order to demonstrate engagement in a "protected activity," the employee claiming retaliation under the PHRA must show that defendants retaliated against him because he either (1) opposed a practice made unlawful by the PHRA, which includes the filing of a charge of discrimination on his own behalf, (also known as the opposition clause of the PHRA), or (2) participated in a charge brought by another (also known as the participation clause of the PHRA). *See Moyer v. Kaplan Higher Educ. Corp.*, 413 F. Supp. 2d 522 (E.D. Pa. 2006). Here, it is evident that McFarland frames his cause of action as defined solely by his alleged "opposition" to disciplinary actions taken against an employee. The Third Circuit has held that determining what constitutes protected opposition activity is a case-specific inquiry, requiring the district court to "look to the message . . . conveyed [by a plaintiff's conduct] rather than the means of the conveyance." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.,* 450 F.3d 130, 135 (3d Cir. 2006). Consequently, the Third Circuit has recognized "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of coworkers who have filed formal charges" as acceptable forms of protected opposition activity. *Barber v. CSX Distrib. Serv.,* 68 F.3d 694, 702 (3d Cir. 1995).

While the opposition clause of the PHRA has been interpreted to protect informal modes of communication that express opposition, the unambiguous language of the opposition clause nevertheless requires that there be opposition to "a practice *forbidden by this act*." 43 Pa. Stat. § 955(d) (emphasis added). Since the PHRA is an antidiscrimination

statute, "one cannot engage in activity protected under the opposition clause[ ] of the [PHRA] . . . without 'opposing' some form of discrimination." *Hubbell v. World Kitchen, LLC*, 688 F. Supp. 2d 401, 438 (W.D. Pa. 2010) *on reconsideration*, No. CIV.A. 06-1686, 2010 WL 5092255 (W.D. Pa. Dec. 8, 2010). Indeed, an informal complaint "without reference to harassment based on a statutorily-enumerated criterion such as race, sex or age, does not constitute activity entitled to protection under . . . the PHRA." *Hubbell*, 688 F. Supp. 2d at 438; *see also Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 271 (2001) (per curiam) (finding no *prima facie* case under Title VII where no reasonable person could have believed plaintiff was complaining of protected activity); *Curay–Cramer,* 450 F.3d 130, 135 (3d Cir. 2006) ("Opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context.").

In distilling the arguments presented by the parties' submissions and the facts gleaned from the record, it appears that McFarland vacillates between two arguments to support his position that he was retaliated against for opposing the discriminatory action taken against Ms. Adams. First, McFarland devotes most of his briefing to Defendants' purportedly illegal tape recording of telephone conversations between shift supervisors Ms. Adams and Mr. Farrell. Specifically, the thrust of his argument is that he engaged in protected activity by refusing to participate in taking any disciplinary action against shift supervisors Ms. Adams and Mr. Farrell for conducting personal conversations on the supervisor line because said conversations were, in his view, "illegally recorded" by Defendants. (Doc. 73, at 19). Second, while not addressed in his motion for summary judgment, McFarland testified at his deposition that shortly after it was decided that these supervisors would not be disciplined for their conversations conducted on the supervisor

line, Defendants began criticizing and reprimanding Ms. Adams more than Mr. Farrell *because of her gender*, which included, but was not limited to, requesting McFarland to issue a written reprimand to Ms. Adams for insubordination, suspending Ms. Adams for a Computer Aided Dispatch message that was purportedly improper, and directing McFarland to issue a written reprimand to Ms. Adams for disclosing certain confidential information on her Facebook page, all of which McFarland allegedly opposed. (Doc. 69-1, at 82-84). Thus, the focus of this argument is that McFarland engaged in protected activity by opposing the attempts to discipline Ms. Adams because of her gender.

Even when construing the facts and inferences in the light most favorable to the McFarland, McFarland's alleged "opposition" to specific instances of attempted disciplinary action taken against Ms. Adams does not constitute protected activity under the PHRA because his objections cannot be reasonably construed to express "opposition" to *sex-based discrimination* or any other prohibited form of discrimination under the PHRA. *Curay–Cramer,* 450 F.3d at 135–137. Indeed, there is no evidence in the record that McFarland in any way communicated to his colleagues that he opposed the unequal treatment of Ms. Adams based on her gender. Rather, McFarland conflates the act of communicating opposition to *disciplining* Ms. Adams with communicating opposition to the *discrimination* of Ms. Adams on the basis of her *gender. See Rife v. Borough of Dauphin*, 647 F. Supp. 2d 431, 444 (M.D. Pa. 2009) ("[The PHRA's] anti-retaliation provision is not a catch-all . . . but rather, its purpose is to ameliorate employment discrimination."). While there is suggestive evidence that McFarland opposed the chosen disciplinary tactics and the basis for those disciplinary actions, he "never indicated to Defendants that [ ]he 'reasonably believed' that

any unlawful practices existed at the time or that [ ]he actually opposed such practices." *Reichman v. Bureau of Affirmative Action*, 536 F. Supp. 1149, 1174 (M.D. Pa. 1982).

With respect to McFarland's opposition to disciplining Ms. Adams and Mr. Farrell for conversations held on the supervisor line, for example, McFarland testified at his deposition that he opposed disciplining these individuals because of how Defendants received notice of the infraction—through "illegally" taped recordings of these supervisors' conversations. He additionally indicated that he expressed to the Chief Clerk his opinion that the supervisors' conduct at issue did not violate any county personnel policy. (Doc. 69-1, at 61). However, there is no evidence in the record that McFarland's opposition was connected to the unequal treatment of Ms. Adams as a member of a protected class under the PHRA. Rather, he opposed the suspension of these two shift supervisors because of what the alleged suspension was based on—"illegal" recordings of the two employees conversing about personal matters and his opinion that the conduct complained of did not violate any internal policy. To the extent McFarland interprets the PHRA to protect him from retaliation for opposing a potentially unfair or illegal business practice, he has misconstrued the purpose of the PHRA, which is to protect against discriminatory employment practices. *Compare Rife*, 647 F. Supp. 2d at 444 (holding that plaintiff's opposition to defendant's use of derogatory language was not a protected activity because "it is clear from the record that this opposition was not connected to any unequal treatment of employees or any other activity protected . . . under . . . the PHRA"), *with Washco v. Fed. Express Corp.,* 402 F. Supp. 2d 547, 556 (E.D. Pa. 2005) (finding that plaintiff's statements regarding racial discrimination are considered protected opposition under the PHRA).

McFarland's alternative basis for relief fares no better.[4] Specifically, McFarland offers scant allegations of his own oppositional conduct with respect to Defendants subsequent attempts to have Ms. Adams disciplined. For example, he references an incident in July of 2010 where he was directed to discipline Ms. Adams for purportedly violating Luzerne County 911's confidentiality policy by disclosing on her Facebook page the name of a suicide victim who Ms. Adams's colleagues had responded to during Ms. Adams's shift. The disclosure occurred after Ms. Adams's shift but prior to the family receiving notice of the death. McFarland testifies that he investigated the complaint and on the basis of that investigation concluded that there were no grounds to discipline Ms. Adams. However, he nevertheless disciplined Ms. Adams at the direction of Commissioner Petrilla, though he insists that he did not "do it to the extent that [Commissioner Petrilla] wanted." (Doc. 46, at 240). Again, McFarland presents no evidence that would allow a jury to draw the inference that the discipline he ultimately decided to impose was in opposition to Defendants' participation in sex-based discrimination. Indeed, Plaintiff's testimony demonstrates that he was not opposing the discriminatory treatment of Ms. Adams, but rather was merely opposing the severity of the recommended punishment after conducting an investigation into the matter and concluding on the basis of that investigation that Ms. Adams did not violate any internal policy. See *Curay-Cramer,* 450 F.3d at 135 ("[W]e are unaware of any

---

[4] To the extent that Plaintiff argues that he was retaliated against for opposing Defendants' *retaliation* against Ms. Adams for her opposing a discriminatory act protected under the PHRA—in essence, a nested § 955(d) claim—Plaintiff has failed to assert a claim for the same reasons his claim that he was retaliated against for opposing Defendants' *discrimination* of Ms. Adams based on her gender fails; namely, that the record is devoid of facts demonstrating that McFarland communicated his opposition to Defendants' discrimination of or retaliation against Ms. Adams.

court that has found public protests or expressions of belief to be protected conduct absent some perceptible connection to the employer's alleged illegal employment practice.").

To accept McFarland's argument that an employee is protected whenever he communicates his opposition to general business practices would render the phrase "forbidden by this Act" meaningless. As noted by the Third Circuit, "[a] general complaint of unfair treatment is insufficient to establish protected activity under the [PHRA]." *Curay-Cramer*, 450 F.3d at 135. The Court cannot dispense with the requirement that McFarland set forth facts in the record showing his opposition to Defendants' discriminatory treatment of Ms. Adams on the basis of her "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability." 43 Pa. Stat. § 955. As the PHRA cannot be stretched to remediate more than what the plain language of the statute permits, and because the record taken as a whole could not lead a rational trier of fact to find for McFarland, Defendants' motion for summary judgment (Doc. 67), will be granted and Plaintiff's motion for summary judgment (Doc. 68), will be denied on the basis that Plaintiff has failed to present evidence that the engaged in a protected activity under the PHRA.

    B. DEFAMATION CLAIM

McFarland also seeks summary adjudication in his favor with respect to his defamation claim by arguing that Defendants terminated him for his refusal to condone Defendants' illegal tape recording of multiple conversations between employees Ms. Adams and Mr. Farrell by disciplining these employees based on the contents of those recordings at Defendants' behest. He claims that Defendants made his improper termination public, "specifically in newspaper articles between November 30, 2010, and December 5, 2010," and in the County Commissioner Meeting Minutes on December 1, 2010. (Doc. 73, at 20).

Moreover, he concludes that as a result of his termination and the resulting news accounts, he has been forced to defame himself by communicating to third parties the circumstances of his discharge—essentially a defamation through self-publication argument. (Doc. 73, at 21).

Defendants seek summary judgment on McFarland's defamation claim on the basis that his defamation claim is barred by the statute of limitations. (Doc. 85, at 13). Specifically, Defendants argue that McFarland's defamation claim is time barred by Pennsylvania's one-year statute of limitations for defamation claims, as his complaint was filed on April 25, 2013, approximately two-and-a-half years from the date of his termination on December 1, 2010.[5] (Doc. 85, at 14-15; Doc. 71, at 13-14).

McFarland, in response to Defendants' motion for summary judgment, departs from the self-publication theory first presented in his complaint and relied upon in his summary judgment motion, and presents instead a new theory he claims presents a genuine issue of material fact for trial—that while his "termination was publicly disseminated through the release of the County Commissioner Meeting Minutes beginning on December 1, 2010," it "continued with subsequent newspaper articles" published through 2011 and 2012. (Doc. 88, at 12). Thus, McFarland concludes that the subsequent publications give rise to their own separate causes of action, each governed by their own statute of limitations.

---

[5] Defendants also seek dismissal of the complaint on the grounds that (1) the requirement that the defamatory matter be published by *Defendants*, rather than the Plaintiff through self-publication, is not met in this case as Plaintiff has failed to produce evidence demonstrating that Defendants communicated the basis for Plaintiff's termination to a third party; and that (2) Defendants are immune from suit under the doctrine of high public official immunity. However, the Court need not address these arguments, as it finds that the statute of limitations effectively bars McFarland's defamation claim.

Defendants rebut this argument by noting that McFarland's general reference to the existence of defamatory newspaper articles concerning his termination purportedly circulated through 2011 and 2012 is wholly insufficient to withstand summary adjudication in Defendants' favor, as the record is completely devoid of any evidence in the form of an affidavit or newspaper article published during that timeframe that would support his defamation claim.

Pennsylvania law provides for a one-year statute of limitations for defamation, which begins to accrue on the date the allegedly defamatory material is first published. 42 Pa. Cons. Stat. § 5523(1); *see also In re Phila. Newspapers*, 690 F.3d 161, 174 (3d Cir. 2012). "The publication of each communication constitutes a separate, potentially-tortious act, governed by its own statute of limitations." *McClenaghan v. Turi*, 567 F. App'x 150, 154 (3d Cir. 2014) (citing *Graham v. Today's Spirit*, 468 A.2d 454, 457 (1983)). Here, there is no dispute as to the applicable statute of limitations or the date the action was filed. Therefore, the only remaining fact material to this inquiry is the date the alleged defamatory content was published. Again, as the Court is faced with making a ruling on cross-motions for summary judgment, it will consider Defendants' motion for summary judgment first, and in doing so will construe all facts and inferences in the light most favorable to McFarland. As McFarland commenced this action on April 25, 2013, he must proffer evidence demonstrating that Defendants published the defamatory content on or after April 25, 2012 to overcome Defendants' motion for summary judgment.[6]

---

[6] While Plaintiff identifies from the record the County Commissioners Board Meeting minutes dated December 1, 2010, as evidence of Defendants' defamatory conduct,
*(footnote continued on next page)*

McFarland alleges that various articles concerning his termination were circulated throughout 2011 and 2012.[7] However, the record contains no evidence confirming that defamatory content was published on or after April 25, 2012. Such an unsupported allegation, raised for the first time in McFarland's brief in opposition to Defendants' motion for summary judgment, is indeed insufficient to satisfy his summary judgment burden of identifying specific facts in the record revealing a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials.").

McFarland also appears to advance an argument that his cause of action for defamation accrued when he was forced to disclose the circumstances of his termination to third parties, such as potential employers. However, Pennsylvania does not recognize compelled self-publication as an alternative to the publication requirement in a defamation

---

such a claim arising from the release of those meeting minutes is clearly barred by the one-year statute of limitations.

[7] As noted above, in his brief in opposition to Defendants' motion for summary judgment, McFarland raises for the first time an argument that Defendants published newspaper articles defaming him in 2011 and 2012. Since McFarland failed to plead this particular claim in his complaint, this Court is not required to consider it. *See Bey v. Daimler Chrysler Servs. of N. Am.*, No. 04–6186, 2006 WL 361385, at *11 (D.N.J. Feb.15, 2006) ("[C]laims [that] were not alleged in the complaint [ ] cannot be raised for the first time in opposition to a motion for summary judgment"); *see, e.g., Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)."); *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment"). However, the Court will address this argument out of an abundance of caution.

action, especially where the "defamation action rests on the publication of an employee termination letter by the employer to the employee." *Yetter v. Ward Trucking Corp.*, 585 A.2d 1022, 1025 (1991); *Ritter v. Pepsi Cola Operating Co. of Chesapeake & Indianapolis*, 785 F. Supp. 61, 64 (M.D. Pa. 1992). Even assuming, *arguendo*, that Pennsylvania recognized a defamation cause of action based on compelled self-publication by an employee, the record contains no evidence of the timeframe in which this alleged self-defamation took place for purposes of overcoming Defendants' statute of limitations defense.

As McFarland has failed to present facts raising a genuine issue for trial with respect to the statute of limitations, summary judgment will be entered in favor of Defendants. Accordingly, the Court will deny McFarland's motion for summary judgment (Doc. 68), and will grant Defendants' motion for summary judgment with respect to McFarland's defamation claim (Doc. 67).

### IV. CONCLUSION

Based on the foregoing discussion, the Court will deny Plaintiff's motion for summary judgment (Doc. 68), and grant Defendants' motion for summary judgment (Doc. 67).

An appropriate Order follows.

BY THE COURT:

Dated: January 19, 2016

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**